Jones, Chief Judge,
delivered the opinion of the court:
Plaintiff, a native-born American citizen, claims that she is entitled to just compensation from the United States Gov- *417 eminent for the use, and damage incident to such use, of her French castle by the military forces of the United States. The alleged period of requisition and use was from October 17, 1944, to August 25, 1945. The plaintiff also claims as creditor-beneficiary under an Executive agreement between the United States and France entered into on May 28,1946,[1] it being asserted that she was only partially paid by the French Processing Agency,[2] and that defendant because of its alleged primary obligation, is liable for the balance.
This case came before this court on defendant’s motion to dismiss on the ground that both phases of plaintiff’s claim were barred by the statute of limitations.[3] After argument, the case was referred to a trial commissioner under a limited reference described in the findings of fact. Thereafter, the original motion to dismiss was itself dismissed without prejudice. Following the filing of the trial commissioner’s report on the limited reference, defendant again moved to dismiss and the matter is now before the court on the second motion.
Evidence was adduced before the trial commissioner on the basis of which he found and the court adopts his findings that the plaintiff’s property was taken by French authorities under the laws of France. The questions propounded in the limited reference are thereby rendered moot.
*418 It follows that plaintiff is not entitled to recover, and the petition will be dismissed.
It is so ordered.
Littleton, Judge, (Bet.) ; LaeamoRe, Judge; MaddeN, Judge; and Whitaker, Judge, concur.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner W. Ney Evans, and the briefs and argument of counsel, makes findings of fact as follows:
The petition in this case, filed on December 28, 1955, asserted a claim for just compensation, for the alleged taking of plaintiff’s[4] French chateau by United States military forces in October 1944.
On February 27,1956, defendant filed a motion to dismiss on the ground that the claim was barred by limitations. This motion was argued and submitted at the October Term, 1956. The order of limited reference was issued on November 27,195'6.[5]
The order posed two questions[6] and closed with the following provision:
The parties may stipulate the facts or they may submit evidence relating to these questions before the commissioner to whom the case has been referred, and he shall submit his findings thereon in due course.
The parties were unable to stipulate. On October 4,1957, plaintiff filed a motion for call upon the Department of *419 State.[7] Following a conference between counsel for the parties and the commissioner on November 1, 1957,[8] a trial session was scheduled for December 12, 1957.
Evidence was taken on December 12 and 13, 1957, in the course of which the purpose of the session[9] was broadened to permit either party to present evidence in conformity with the court’s order of reference.
Evidence was adduced which establishes the fact that the property was taken by French authorities under the laws of France. Questions relating to an alleged taking by the United States were thereby rendered moot.
The facts in summary form are as follows:
On April 1, 1944, in anticipation of landings on the continent of Europe, Headquarters, European Theatre of Operations, issued Standard Operating Procedure No. 10, entitled “Procurement Regulations in Occupied and Liberated Territories.” This SOP provided that “the acquisition of the use of real estate (land and/or buildings) either by rental, requisition or seizure, is an Engineer function * and laid down a series of principles for the guidance of Engineer officers.
The SOP was amended on July 1, 1944, to provide that “wherever possible, procurement in liberated territories will be effected by requisitioning through local civil officials in accordance with local law, and payment thereon will be deferred until Reciprocal Aid or other agreements have been negotiated with the government concerned * *
As of the end of July 1944, all direct procurement of the use of real estate in France by United States Forces was discontinued, and the responsibility for such procurement was assumed by French authorities.
Thereafter, agreements between the United States and various French authorities extending from the -govemment-in-exile (Algiers) to the Provisional Government of the Repub- *420 lie of France were continually refined. On August 7, 1944, the government-in-exile issued a document entitled “Aid to Allied Forces, General Instruction No. 1,” which, assumed that the French Government “will be charged with furnishing these armies [Allied] with the supplies, facilities and services they may require.” On August 24,1944, the French Government issued further instructions and promulgated forms for use in making demands upon French authorities. One of the forms was designated Form No. 101 and entitled “Demand-Mutual Aid.” Another was Form No. 102, entitled “Mutual Aid-Receipt.”
On September 23, 1944, the Army issued Standard Operating Procedure No. 10F, entitled “Field Procurement by United States Forces in France.” By the terms of SOP No. 10F, the initial SOP No. 10 was withdrawn and superseded and, with respect to real estate, Engineer officers were instructed to make their demands upon French authorities on Forms No. 101 and to obtain from the French authorities receipts (for mutual aid) on Forms No. 102.
Plaintiff’s property was occupied by United States Forces on October 17,1944. On that date a request for the property was given to the appropriate French authorities on Form No. 101, and a joint survey' of the property was made by representatives of France and of the United States.[10]
There is no evidence of any authority under which United States Forces might have acted in occupying the premises other than SOP No. 10F and the agreements between the United States and the Republic of France upon which the SOP was based.
CONCLUSION OE LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover, and the petition is therefore dismissed.

 Known as the Byrnes-Blum Agreement. See Treaties and Other International Acts, Series 1928, U.S. Department of State Publications 3557, p. 43. There was a second Byrnes-Blum Agreement signed the same day, but since it covered claims of French residents only, it would have no application to plaintiff who is an American citizen.

 The claim was referred, over plaintiff’s protest, by the Army officials to the French authorities pursuant to the Reciprocal Aid Claims Agreement between the two countries, by the terms of which France agreed to process and pay claims of the character involved here. The French authorities made three payments totaling $51,405.13. The plaintiff agreed to accept the balance in negotiable French Government bonds, which plaintiff alleges have never been delivered.

 The petition was filed on December 28, 1955, more than 10 years after the use of the property ended and the castle was returned to the plaintiff. By the terms of Title 28, united States Code, section 2501, the action is barred by the statute of limitations unless the allegations of the petition, if accepted as true, show that the statute has been tolled. The plaintiff urged that the action of the United States Government in referring the claim to the French Processing Agency for settlement had the effect of tolling the statute, and that the payments by the French Government had the effect of renewing or reinstating the obligation. We need not reach this issue in view of our finding that the property was not taken by the United States.

 Plaintiff alleges that she Is a native American citizen resident In the United States at the time of the use and occupancy of her property in France.

 This order was amended on February 12, 1958, to dismiss defendant’s motion without prejudice, the order to stand in all other respects.

 under what statute, executive order, or other authority did the American officials (of the Claims Liaison Section of the United States Forces and of the Department of State) act in making the agreement that France would process claims of American nationals who had suffered damage in France from causes originating in the war, and compensate them?
“2. What letters or memoranda were exchanged between representatives of the two governments while negotiating, making or carrying out such agreement which would bear on the question of whether such American officials had intended to make the French government the agent of the United States in carrying out such agreement and to what extent it was intended by them that the United States should be bound by any action that might be taken by the French government in processing such claims?”

 On January 10, 1968, plaintiff’s motion of January 8 for leave to withdraw the motion for call was allowed.

 The purpose of the conference was to attempt to narrow the search by defendant, if plaintiff’s motion for call should be allowed.

 The initial purpose of the session was to assist in the endeavor to narrow the search to be made pursuant to the call.

 For reasons not disclosed by the evidence a further request for the use of these premises, on Form No. 101, was served on the Mayor of Mereville on February 27, 1945.